IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER MICHAEL JOSLYN<br>AIS #266517, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 2:15-CV-297-WC<br>) (WO)<br>) |
| CORIZON MEDICAL SERVICES and<br>NURSE LONG, | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

### I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Christopher Michael Joslyn, a state inmate, in which he asserts the defendants acted with deliberate indifference to his medical needs in March of 2015. Doc. No. 1 at 2-4. Specifically, Joslyn alleges that he did not receive his psychotropic medication for a week due to defendant Long not ordering this medication in an appropriate manner. *Id*. at 4. Joslyn seeks monetary damages for the alleged violation of his constitutional rights. *Id*. at 5.

The defendants filed a special report and relevant evidentiary materials in support of their report, including an affidavit and certified copies of Joslyn's medical records. In

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

these documents, the defendants deny they acted with deliberate indifference to Joslyn's medical needs.

After receipt of the defendants' special report, the court issued an order directing Joslyn to file a response to the arguments set forth by the defendants in their report and advising him that this response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. No. 20 at 2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. No. 20 at 2-3. Joslyn filed no response to this order.

Pursuant to the directives of the aforementioned order, the court now treats the defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324);. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden. Based on the foregoing, the burden shifts to Joslyn to establish, with appropriate evidence beyond the pleadings, that a

---

[2]Although Rule 56 underwent stylistic changes in December of 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot

prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim of a constitutional violation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984,

986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004)

("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-54 (11th Cir. 2013) (same).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Joslyn has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendants.

### III. DISCUSSION

Joslyn complains that he did not receive his prescribed psychotropic medication, Triavil, during the week of March 21, 2015. In support of this claim, Joslyn makes a conclusory and unsupported allegation that Nurse Long failed to order his medication which resulted in its unavailability to him from March 21, 2015 until March 27, 2015.

Nurse Long adamantly denies the allegations set forth by Joslyn and asserts that she in no way acted with deliberate indifference to his medical needs. Specifically, Nurse Long maintains that she was not responsible for ordering Joslyn's medication and as soon as

Joslyn advised her that his medication had not been made available to him she undertook appropriate actions to ensure he received the medication.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Under applicable federal law, neither medical malpractice nor negligence equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere

9

> negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). To proceed on a claim challenging the constitutionality of medical care "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical

judgment." *Daniels v. Williams*, 474 U.S. 327, 330-333 (1986); *Estelle*, 429 U.S. at 106 (holding that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 836 (observing that a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference.").

In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted) (alterations in original). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim

by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

The defendants submitted the affidavit of Nurse Long and relevant medical records in response to the complaint filed by Joslyn. Nurse Long addresses the allegation of deliberate indifference as follows:

> Through my role as [an] LPN for Staton, I am familiar with an inmate by the name of Christopher Michael Joslyn ("Mr. Joslyn"), who is incarcerated at Staton. As an LPN at Staton, I am responsible for certain aspects of the medical operations. For example, I am responsible for distributing medications to inmates through the keep-on-person process. While I may have assisted with the sick call process . . . on a very limited number of occasions, I am not authorized to diagnose medical conditions or prescribe medications during the course of any sick call evaluations. Decisions related to the diagnoses of specific medical conditions and the treatment of those conditions are made exclusive by the clinicians at Staton.
> . . .
> . . . [I]nmates receive prescribed medication through the process commonly referred to as "pill call." During pill call, inmates line up outside of the pill call windows outside of the Health Care Unit. When the inmate arrives at the pill call window, he provides a member of the medical staff who is standing on the other side of the pill call window with his

identification badge which is issued by the ADOC. The member of the medical staff then retrieves the inmate's medication which is organized alphabetically and punches the medication out of a medication blister pack into a small plastic cup. The medication is provided to the inmate who is required to immediately take the medication.

As the pill call process progresses, the medical staff conducting the pill call records the disbursement of medication on forms known as "Medication Administration Records" or E-MARs. These E-MARS are maintained electronically. Once the medications are dispensed, the medical staff member electronically record[s] the dispensing of medication within the E-MAR system on the corresponding E-MAR. If an inmate does not report to pill call to retrieve his medication, the computer will automatically mark the inmate as absent after the two-hour window for pill call has expired. If the medical staff conducting pill call discovers an inmate's medication has run out, expired or cannot otherwise be dispensed to the inmate, the mid-level medical staff at Staton can refill the medication automatically at pill call, if the prescription order is still current. If the medical staff conducting pill call discovers an inmate's medication has expired, the medical staff at Staton is instructed to document the unavailability of the medication and notify the prescribing physician immediately.

. . .

Mr. Joslyn alleges in his Complaint that I somehow did something improper during the period from March 21, 2015, through March 27, 2015, when he claims that he did not receive his medication "Triavil."

Mr. Joslyn arrived at Kilby Correctional Facility on December 19, 2014, at which time he underwent an initial screening and evaluation by the mental health staff at Kilby. There, he received a prescription for the anti-depressant Celexa.

Mr. Joslyn transferred from Kilby to Staton on February 9, 2015. On February 12, 2015, the mental health staff at Staton met with Mr. Joslyn, electing to discontinue his prescription for Celexa and prescribing an alternative medication, Triavil. The next day, Mr. Joslyn submitted a sick call request form, asking to be taken off of pill call and placed on the keep-on-person medication list. However, because we cannot administer most psychotropic medications via the KOP medication protocol, this request was denied. Also, it is important to note that since January of 2015, I have not been assigned to distribute medications to inmates who receive their medications through pill call and do not participate in the refilling of medications for inmates who received medications through the pill call process.

Looking back at Mr. Joslyn's medication administration records, it appears to me that, on or about March 25, 2015, Mr. Joslyn approached me

> while I was reviewing KOP medications with the inmates at Staton. Mr. Joslyn reported to me at that time that he had not received his medication Triavil for a the period of [a few] days through the pill call process. At that point in time, I immediately pulled Mr. Joslyn's medication administration records and reviewed the records to confirm that he had not, in fact, received this medication. During my review of his medication information, I discovered that his medications had inadvertently been sent to Elmore Correctional Facility, which is located immediately adjacent to Staton. At that point in time, I contacted the Elmore medical staff and directed them to send the medications to Staton, which I confirmed occurred later that [same] day. I do not know why Mr. Joslyn did not receive[] his medication on the evening of March 25, 2015 [as it had been brought to Staton], nor do I understand why he failed to appear for pill call on March 26, 2015. The medication administration records for Mr. Joslyn confirm that he received his Triavil on March 27 through March 31, 2015. . . . Mr. Joslyn never notified me of any additional issues with or interruptions in his receipt of Triavil. At most, Mr. Joslyn went without his Triavil for a period of one (1) day after I was notified by him of a problem with his medication.
>
> I cannot find any record that Mr. Joslyn [during the relevant time period] notified any other member of the mental health or medical staff when he did not receive his Triavil. The medical staff did not receive a sick call request form from Mr. Joslyn during the period between March 21 and March 27, 2015, regarding his inability to obtain his medication Triavil. I do not know why Mr. Joslyn did not notify any member of the medical staff earlier. That being said, as soon as Mr. Joslyn notified me of the issues with his medication, I immediately took steps to ensure that he received his medication.

Doc. No. 19-1 at 1-2, 5-8 (internal paragraph numbering and citations to medical records omitted).

The statements set forth in Nurse Long's affidavit are corroborated by the objective medical records contemporaneously compiled during the treatment process. In addition to the information provided by Nurse Long, the medical records demonstrate that, contrary to Joslyn's assertion, he received Triavil on March 21, 2015. Doc. No. 19-2 at 78. These records likewise show that Joslyn did not receive this medication from March 22, 2015

14

through March 25, 2015, the date he spoke with Nurse Long. *Id.* However, the medical records establish that Joslyn was a "no show" for pill call on March 26, 2015, at which time the medication was available to him, and in contradiction to Joslyn's allegation in the complaint, demonstrate that medical personnel administered Triavil to him on March 27, 2015. *Id.* Thereafter, the administration of this medication to Joslyn continued as prescribed.

Under the circumstances of this case, the court concludes that the defendants did not violate Joslyn's constitutional rights. Specifically, there is no evidence upon which the court can conclude that Nurse Long or any other medical professional acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the court demonstrates that when Joslyn informed Nurse Long of the issue with his psychotropic medication she immediately undertook actions to determine the reason this medication had not been dispensed to him as prescribed. Upon discovering that the medication was erroneously sent to Elmore for distribution, Nurse Long contacted medical personnel at that facility and directed them to return Joslyn's medication to Staton, which they did on that same date. Clearly, Nurse Long did not act with reckless disregard after speaking with Joslyn about his medication and her actions undertaken in addressing his complaint were objectively reasonable.

Based on the foregoing, the court concludes that the actions of Nurse Long did not constitute deliberate indifference. Joslyn's self-serving assertion of deliberate indifference

does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same). Moreover, Joslyn has failed to present any evidence showing the defendants knew that the manner in which Nurse Long addressed his medication issue created a substantial risk to his health and with this knowledge consciously disregarded the risk. The record is therefore devoid of evidence—significantly probative or otherwise—showing that the defendants acted with deliberate indifference to a serious medical need experienced by Joslyn. Consequently, the defendants are entitled to summary judgment.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion.

DONE this 15th day of November, 2017.

    /s/    Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE